**JERRY WARD CONSTRUCTION COMPANY, Plaintiff–Respondent,**

v.

**EXECUTIVE HILLS HOME BUILDERS, INC., Defendant–Appellant.**

**No. WD 41033.**

Missouri Court of Appeals,
Western District.

Aug. 1, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 3, 1989.

Douglas T. Sloan, Linde Thomson Langworthy Kohn & Van Dyke, Kansas City, for defendant-appellant.

Raymond E. Moore, Independence, for plaintiff-respondent.

Before BERREY, P.J., and
TURNAGE and MANFORD, JJ.

TURNAGE, Judge.

Jerry Ward Construction Company brought suit against Executive Hills Home Builders, Inc. on an account. The petition pled several theories but the case was tried only on the account claim. The court heard the case without a jury and entered judgment in favor of Ward in a total amount of $44,270.61 for carpentry work performed on ten homes and two business buildings. Executive Hills contends Ward failed to prove the reasonableness of his charges. Affirmed in part and reversed in part and remanded.

The parties stipulated that Ward was hired by Executive Hills to perform carpentry work on various homes being constructed by Executive Hills on lots owned by it and to do certain carpentry work on two business buildings. The parties stipulated that the work was performed in a satisfactory and workmanlike manner. In addition, the parties stipulated to the amount of Ward's bills to Executive Hills for each lot and the two office buildings and further

stipulated to the amount remaining unpaid on each bill.

The petition on account was in 12 counts with each count alleging work on a different lot or business building. Ward testified that he had been in the carpentry business for about 20 years and employed several carpenters. Ward testified that on two lots, 15 and 22, he had agreed to perform carpentry work for a fixed fee, but on the other lots and the business buildings there was no agreed fee for his work. Ward testified to the hourly amount he paid his carpenters and the amount he billed for their time to cover his overhead and profit. Ward said changes ordered by Executive Hills resulted in Ward's charges being about double the agreed fee on Lot 22. Ward offered no evidence that the charges made for carpentry work on the lots or business building not subject to a fixed fee were reasonable. Invoices to Executive Hills listed only the lot, date of the week covered, and total charge. The architect employed by Executive Hills said Ward gave a quote for his price to frame the house on Lot 22 and he converted this to a square foot cost. Because the square foot cost was comparable to the other quotes he had, Ward was hired.

Executive Hills contends that the judgment should be reversed because Ward was required to prove the reasonable value of his work but failed to do so.

On an action on account the plaintiff is required to prove "an offer, an acceptance and consideration between the parties as well as the correctness of the account and the reasonableness of the charges." *Coca-Cola Bottling Co. v. Groeper*, 691 S.W.2d 395, 397[1] (Mo.App.1985). That case further held that the burden of proof is on plaintiff to make a submissible case. *Id.* at 397[2].

In this case Ward was required to prove that the charge he made for work on each lot not covered by a fixed fee contract, and on each business building, was reasonable. The only evidence on that question offered by Ward was the reasonableness of the hourly amount which he charged for carpentry work. Executive Hills contends the

reasonable value of the hourly wage paid for labor is only part of the burden Ward carried because he was also required to prove that the charges for the work performed on each lot and business building not covered by a fixed fee contract was reasonable. Executive Hills is correct.

■ The burden of proof on Ward is equivalent to the burden of proof in a cause of action based on quantum meruit. In that cause of action, it is necessary to prove the reasonable value of the labor supplied. *McCardie & Akers Const. Co., Inc. v. Bonney*, 647 S.W.2d 193, 194[2] (Mo.App.1983). Ward could have proven reasonable value by adducing evidence as to the reasonable value of the labor performed on each lot and each business building in a lump sum. Ward failed to introduce such evidence.

■ Ward could have also satisfied his burden of proof by proving the reasonable number of hours required to complete the work on each lot and business building together with the reasonable value per hour for the carpentry work. *Otte v. McAuliffe*, 441 S.W.2d 733, 737 (Mo.App. 1969) (the reasonable number of hours must be established).

Ward proved only that the amount which he charged Executive Hills for each hour of carpentry work was reasonable. As stated, this was not sufficient. Ward was required to prove that the charges actually made for the work on each lot and business building not covered by an agreement were reasonable. This could be established in one of two ways. Ward could have established that the number of hours charged to Executive Hills for each lot and building was reasonable. This together with his proof of the reasonable value of carpentry labor per hour would have proven the total charge for each lot and building was reasonable. Or in the alternative, Ward could have proved that the sum he billed Executive Hills for each lot and building was reasonable for the work performed. Ward failed to do either of these.

Instead, Ward contends that Executive Hills conceded his charges were reason-

able; this is a mischaracterization of the evidence. There was evidence that Ward charged a reasonable hourly charge for carpentry labor. This, however, did not prove the reasonable charge for the work performed on each lot and building.[1]

There is no dispute that Ward is entitled to $10,800 which was the contract price on Lot 15 which remains unpaid. The contract price on Lot 22 has been paid. The judgment is affirmed to the extent of $10,800 representing the contract price on Lot 15. The judgment above that amount is reversed and this cause is remanded for further proceedings.

MANFORD, J. concurs.

BERREY, J. dissents in separate dissenting opinion.

BERREY, Judge, dissenting.

I respectfully dissent.

Quite simply, Ward should receive the money due and owing him for his work. The transcript is replete with evidence as to the reasonable nature of the charges, albeit the word "reasonable" rarely appears. The simple exercise of common sense should allow a solution other than that reached by the majority. Semantics should not be allowed to provide a smokescreen to obscure the fact that Ward has not been paid, nor hide the reluctance on the part of appellant to pay what they owe.

This was a court tried case. The appellate standard of review dictates that the decision of the trial court must be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declared or applied the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The trial court did not enter findings of fact or conclusions of law. The rule for review in this situation is for this court to resolve all factual issues in accordance with the judgment and to affirm the judgment if it can be supported on any theory consistent with the evidence. *Young v. Ray America, Inc.*, 673 S.W.2d 74, 78 (Mo.App.1984). This the majority fails to do.

The overwhelming weight of the evidence supports the reasonableness of the amount charged by Ward. Furthermore, the trial court's judgment is supported by substantial evidence. As the majority correctly points out, in an action on account, the burden of proof is on the plaintiff to make a submissible case. *Coca-Cola Bottling Co. v. Groeper*, 691 S.W.2d 395, 397 (Mo.App.1985). Ward has more than met that burden.

Ward began his performance of carpentry services on Lot 22 under a written fixed fee contract. Due to various revisions, insisted on by respondent, the final invoice for Lot 22 was nearly double the original contract price. The date of the contract for Lot 22 was November 12, 1986. The dates the other contracts were entered into are listed below:

| Lot # | Type of Contract | Date of Contract |
| --- | --- | --- |
| 25 | Hourly | 12-11-86 |
| 17 | Hourly | 12-12-86 |
| 19 | Hourly | 1-1-87 |
| 7410 | Hourly | 1-22-87 |
| 9 | Hourly | 1-29-87 |
| 46 | Hourly | 3-11-87 |
| 16 | Hourly | 3-18-87 |
| 9 | Hourly | 3-11-87 |
| 23 | Hourly | 4-21-87 |
| 7505 | Hourly | 5-27-87 |
| 15 | Fixed | 6-1-87 |

During the time that Ward was working on the various projects and entering into contracts for further projects, bills were sent to Executive Hills for work performed. These bills are too numerous to detail but suffice it to say Executive Hills was billed on a weekly basis and knew what it was being charged. Richard Stokes, the expert called in to testify for Executive Hills, was asked about billing. He testified that, "I think a billing should indicate work completed and status, where

---

1. The dissent relies on the rule that payment of a bill provides substantial evidence from which reasonableness may be inferred. Ward is not seeking to recover on any bill which has been paid. In that circumstance there is no basis on which to apply the rule. Further, as the testimony of Cantrell demonstrates, Executive thought Ward's charges were too high. Executive produced evidence that the amount Ward sought to recover in this case was unreasonable for the work performed.

you are in the job so it can be identified by both sides." Furthermore, Executive Hills, with the exception of a few minor disagreements, paid for the work. Ward's billing practices did not change during this period. Nor was Executive Hills uninvolved in the work being done. Stephen Cantrell, the architect for Executive Hills, testified that he was on the job site three to four times a week and ordered numerous alterations.

The majority's focus is on the reasonableness of the charges made for the work performed by Ward as reflected by the number of hours charged and the price per hour, contending that this is what Ward failed to prove. The mechanical mathematical formula can indeed be used as a method for determining reasonableness. However, in one sense this formula is begging the question. Ultimately what is *required* to be proved is *reasonableness*. Jerry Ward testified that his standard rates were competitive with those of other companies. He also pointed out the unusual number and frequency of the changes Executive Hills wanted while the work was being done and how these changing conditions rendered a fixed price impossible. The rates charged were the same as those used for the extra work on Lot 22, the first project Ward did for Executive Hills. Furthermore, Ward explained what particular changes would cost, as "it was a concern to us, you know, that they were spending this kind of money." Ward testified that the bid he submitted on Lot 22 was "fair and reasonable." Ward dealt with Cantrell almost exclusively and Cantrell was perfectly aware of what work was being done. He testified that he thought that Ward was a good carpenter.

Cantrell himself testified as to the reasonable nature of three "rough-in" quotes given by Ward (Lot 22, Lot 16, Lot 46). When asked whether these bids were competitive, Cantrell replied, "Of the three quotes that we had, yes." Ward can hardly be expected to absorb the costs of the changes which were constantly being made. Cantrell testified that, "We make changes everyday."

Cantrell met with Ward to discuss the charges while Ward was working on Lot 16. Ward brought all his figures in, told Cantrell what it would cost and how he was being billed. Cantrell told him to continue on. Furthermore, Cantrell saw the rates at this time when Ward provided his justifications.

Joseph C. Watts, who was employed as a superintendent for Executive Hills oversaw Ward's work. When asked about his satisfaction with Ward's work and the job that was done, he replied that it was "excellent."

Perhaps the most telling evidence of reasonableness, and appellant's acceptance of Ward's charges as reasonable, shows in the course of conduct between the parties. Executive Hills supervised the work and knew what work was being performed. Ward was billing Executive Hills week after week. Instead of stopping Ward, Executive Hills offered further work to him. The following excerpt from Cantrell's testimony is illuminating:

Q. Now, isn't it true that you had him, right in the middle of lots, you weren't sure what he was charging you, but then you found out what he was charging you, you figured that was too high, but you're going to go ahead and have him work on the lot anyway and work on additional projects, and then you didn't pay him for those additional projects, even though you knew what it was going to cost you?

A. I believe that's because we were in disagreement as to some of the charges he had charged us.

Q. Why didn't you stop him?

A. Because we had fixed costs on those other projects.

Q. You didn't have fixed costs on 23?

A. No, we didn't, but we needed to get the house done.

Q. You didn't have fixed costs on 9?

A. We're not in the practice of asking them to leave their—at the time they're finishing a job.

Q. Are you in practice of continuing on with the contractors and letting them continue to work?

MR. ROSS: Objection, argumentative.

THE COURT: Overruled.

A. Say that again, please.

Q. Is it your practice to let them continue on with their work?

A. No.

The above testimony clearly indicates that Executive Hills allowed Ward to continue with the work he was performing for the company. This is in marked contrast to the practice described above.

Quite clearly, the question of reasonableness need not be determined exclusively by using the majority's formula. The case of *Grothaus v. Brown*, 690 S.W.2d 431 (Mo. App.1985), proves to be instructive. In *Grothaus* an action on account was brought by plaintiff to recover what he was owed for providing goods and services pursuant to an oral contract to farm land for defendant. Plaintiff testified as to the charge for his services and as to similar prices charged in the neighborhood for similar services. *Id.* at 432. The court, in discussing the price of seed purchased by plaintiff stated, "However, 'substantial evidence that the charges were reasonable could be inferred from plaintiff's payment of said bills.'" *Id.* at 433 (*quoting Wright v. Fox–Stanley Photo Products, Inc.*, 639 S.W.2d 407, 410 (Mo.App.1982)). So too, in the instant case can reasonableness be inferred.[1]

Since the majority opinion reverses and remands the cause "for further proceedings" I assume that this means that these further proceedings are to deal only with the issue of "reasonableness."

As there clearly existed substantial evidence of the reasonableness of Ward's charges, I would affirm the judgment of the trial court.

■

---

[1]. The majority is missing the point. *Grothaus v. Brown, supra,* examines the reasonableness of the price of seed. The defendant in *Grothaus* paid for half the seed at the time it was purchased with no evidence that he objected to the price although on appeal he claimed that this purchase price did not constitute evidence of reasonableness. Here, admittedly, Ward is not seeking to recover on a bill that has been paid.

This is not the point. Executive Hills paid weekly bills submitted to them until they claimed that the bills were too high. Still they allowed Ward to continue his work. It is difficult, if not impossible to see how Executive Hills can claim unreasonableness given the course of conduct outlined by the evidence herein.